PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1405
_____

UNITED STATES OF AMERICA

v.

ARTHUR MATTHEW FERGUSON,
a/k/a SIFE


ARTHUR MATTHEW FERGUSON,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-00-cr-00705-001)
District Judge: Honorable Paul S. Diamond
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 7, 2017

Before: JORDAN, HARDIMAN, and SCIRICA,
*Circuit Judges*.

(Opinion Filed:  November 28, 2017)

Leigh M. Skipper, Chief of Federal Defender
Brett G. Sweitzer, Assistant Federal Defender, Chief of
Appeals
Christy Martin, Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
        *Counsel for Appellant*

Louis D. Lappen, Acting United States Attorney
Robert A. Zauzmer, Assistant United States Attorney, Chief
of Appeals
Jeffery W. Whitt, Assistant United States Attorney
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

After spending seven years in federal prison for unlawful possession of a firearm, Arthur Ferguson began serving a three-year term of supervised release. That term of supervised release was revoked after Ferguson was convicted

2

in Pennsylvania state court of sexually assaulting a 10-year-old girl. The United States District Court for the Eastern District of Pennsylvania sentenced Ferguson to an additional 24 months' imprisonment, to run consecutively to his 10 to 20 year state sentence. Ferguson appeals, claiming that the District Court deprived him of due process when it considered his "bare prior arrest record" to determine his sentence.

I

On February 7, 2001, Ferguson pleaded guilty in the District Court to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Ferguson was sentenced to 84 months' imprisonment, to be followed by three years of supervised release.

Two years into that term of supervision, the United States Probation Office petitioned the District Court to revoke Ferguson's supervised release because he had committed another crime. The Probation Office informed the District Court that Ferguson had been convicted and sentenced in the Delaware County Court of Common Pleas on seven counts of aggravated indecent assault on a person less than 13 years old, one count of criminal solicitation of a person less than 13 years old, and eight counts of indecent assault on a person less than 13 years old. Ferguson was sentenced to a term of 10 to 20 years' confinement in state custody, to be followed by seven years' probation.

In light of his state court convictions, Ferguson did not contest in the District Court that he had violated the conditions of his supervised release. The parties and the District Court agreed that although Ferguson's violation carried a range of 30 to 37 months' imprisonment under the

3

United States Sentencing Guidelines (USSG), the statutory maximum sentence was 24 months' imprisonment followed by three years of supervision. Neither party asked the Court to impose a sentence less than the 24-month statutory maximum, but Ferguson requested that the sentence run concurrently with his state sentence, while the Government sought a consecutive sentence.

After hearing the parties' arguments, the District Court explained the factors it considered in fashioning Ferguson's sentence. One of these factors was Ferguson's criminal history, which the Court recounted as follows:

> I have also reviewed the original presentence report . . . , and the defendant has a long and serious criminal history.
>
> Adjudicated delinquent for criminal trespass in 1979 at the age of 13. Simple assault 1980. Adjudicated delinquent. Criminal attempted rape, indecent assault and indecent exposure in 1981 at the age of 15. Criminal attempt and theft by unlawful taking. Adjudicated delinquent at the age of 16 in 1982. Adjudicated delinquent in 1983 in State Court for second degree burglary in Delaware County. At age 17 adjudicated or adjudged delinquent. Disorderly conduct and hindering prosecution.
>
> Also, he has adult convictions. In 1985 at the age of 19, criminal attempt in Delaware County Common Pleas Court. In 1986 at the age of 20, robbery and conspiracy, Delaware County Common Pleas Court. In 1988 at the age of 21,

4

> disorderly conduct also in Delaware County. In 1989 possession of marijuana for personal use at the age of 23. And at the age of 25 in 1991, knowing or intentionally possessing a controlled substance, manufacture, delivery or possession with intent to deliver. Another drug conviction in 1995, again in Delaware County Common Pleas Court.
>
> And one, two, three, four, five, arrests for burglary, burglary, possession of an instrument of crime, criminal conspiracy and homicide. It appears that the defendant is incapable of abiding by the law.

App. 25–28. The District Court then remanded Ferguson to the custody of the Bureau of Prisons to be imprisoned for 24 months, running consecutive to his state sentence, with no period of supervised release to follow. The Court asked counsel for each party if they had any objections, but neither did. Ferguson filed this timely appeal.

## II

The District Court had jurisdiction under 18 U.S.C. §§ 3231 and 3583. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

As Ferguson acknowledges, his failure to preserve his objection to the District Court's arrest record reference at sentencing means we review it only for plain error. Fed. R. Crim. P. 52(b); *see also United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc). Under this standard, Ferguson bears the burden of showing: "(1) error, (2) that is

5

plain or obvious, and (3) that affects a defendant's substantial rights." *United States v. Goodson*, 544 F.3d 529, 539 (3d Cir. 2008) (citing *Johnson v. United States*, 520 U.S. 461, 467 (1997)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if . . . the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation omitted).

## III

## A

Ferguson relies on our opinions in *United States v. Berry*, 553 F.3d 273 (3d Cir. 2009), and *United States v. Mateo-Medina*, 845 F.3d 546 (3d Cir. 2017), to argue that the District Court plainly erred by considering arrests that did not lead to convictions. In both of those cases, the defendants' Presentence Investigation Reports listed arrests for charges that did not result in convictions and did not offer any evidence regarding the alleged offenses. Ferguson's Presentence Investigation Report does the same. He argues that—like the sentencing courts in *Berry* and *Mateo-Medina*—the District Court deprived him of due process of law by relying on his arrest record in determining his sentence.

In *Berry*, in addition to considering the relevant factors under 18 U.S.C. § 3553(a) at sentencing, the district court explicitly relied on the two defendants' arrests. It was necessary to do so, the court stated, because their lack of prior criminal convictions did not adequately reflect the "seriousness of their criminal exposure in the past. The fact that they were charged with crimes and then, the prosecution

6

was dropped because nobody showed up to prosecute or something like that, means that their criminal history points were probably understated." *Berry*, 553 F.3d at 279. It was "rather obvious," the court continued, that "reading between the lines . . . the reason [defendant Berry] doesn't have any actual adult convictions is because of the breakdowns in the court—in the state court system—and not because of innocence." *Id.* at 277. The sentencing judge's speculation was based on an inaccurate reading of the defendants' Presentence Investigation Reports. Even more importantly, the court relied on mere arrests to determine the sentences. And that constituted plain error that required resentencing. *Id.* at 281.

We recognized in *Berry* that while the Guidelines permit district courts to consider "[p]rior similar adult criminal conduct not resulting in a criminal conviction," *id.* (alteration in original) (quoting USSG § 4A1.3(a)(2)(E)), they also caution that "[a] prior arrest record itself shall not be considered for purposes of an upward departure." *Id.* (alteration in original) (quoting USSG § 4A1.3(a)(3)). Despite the absence of an upward departure in *Berry*, we concluded that any reliance by the district court on the arrests themselves amounted to plain error: "unsupported speculation about a defendant's background is problematic whether it results in an upward departure, denial of a downward departure, or causes the sentencing court to evaluate the § 3553(a) factors with a jaundiced eye." *Id.* (citation omitted). We explained that under the Due Process Clause, "[a] defendant cannot be deprived of liberty based upon mere speculation." *Id.* at 284. Accordingly, we held "that a bare arrest record—without more—does not justify an assumption that a defendant has committed other crimes[,] and it

7

therefore cannot support increasing his/her sentence in the absence of adequate proof of criminal activity." *Id.*[1]

We applied the principles articulated in *Berry* in *Mateo-Medina*, where the district court sentenced the defendant—a citizen of the Dominican Republic who pleaded guilty to illegal reentry—based in part on its consideration of arrests that did not lead to convictions. 845 F.3d at 551. As in *Berry*, the district court made clear that there was a direct link between the arrests and the sentence to be imposed:

> I also cannot overlook the defendant's rather extensive . . . interaction with the criminal justice system. But there were as I counted, I believe seven arrests, two convictions in three states since 1988. So, the defendant who was in this country initially illegally since at least the 80s has engaged in conduct which to the Court's view belied and made ring hollow a

---

[1] Indeed, it is only reliance on an arrest record bereft of facts, and thus resulting in unsupported speculation, that raises due process concerns. We have permitted sentencing courts to consider arrests if the underlying conduct has been proven by a preponderance of the evidence. *See United States v. Zabielski*, 711 F.3d 381, 391 (3d Cir. 2013) (explaining that "a bare arrest record—without more—does not justify an assumption that a defendant has committed other crimes" (quoting *Berry*, 553 F.3d at 284), but that a sentencing court nevertheless "may consider '[p]rior similar adult criminal conduct not resulting in a criminal conviction'" (alteration in original) (quoting USSG § 4A1.3(a)(2)(E)), "as long as that conduct has been proven by a preponderance of the evidence" (citation omitted)).

> little bit his desire to merely come to America
> to seek a better life.

*Id.* at 549. Both parties recommended that the defendant be sentenced to time served, which would have translated to roughly six months' imprisonment, but the court sentenced him to a year and a day. *Id.* We concluded that the court's consideration of Mateo-Medina's bare arrest record had tainted its sentencing decision, as forbidden by *Berry*. *Id.* at 552.

We did not arrive at this conclusion mechanically. We did not, for example, hold that any reference by the district court to prior arrests not leading to conviction amounted to plain error. Instead, we carefully examined the court's statements in context to discern whether or not it actually relied on Mateo-Medina's arrest record when fashioning his sentence. *Id.* at 552–54. In doing so, we rejected the Government's attempt to distinguish the case from *Berry*. The Government argued that the court's reference to Mateo-Medina's bare arrests reflected the court's "doubt as to [his] credibility in stating his reasons to return to the United States, not his criminal nature." *Id.* at 552. We found this explanation implausible, given that Mateo-Medina had only two prior convictions, one for fraudulently obtaining a passport five years earlier (the offense for which he was removed) and the other a 15-year-old conviction for driving under the influence. It "strain[ed] credulity" to argue, as the Government did, "that the sentencing court was referring only to these two convictions as an extensive interaction with the criminal justice system." *Id.* We thus concluded that the district court had erred in the same way as had the *Berry* court: it impermissibly allowed a bare arrest record to influence the sentencing decision. *Id.* at 554. When such influence is

9

evidenced in the record, a new sentencing is required. Notwithstanding a district court's subsequent consideration of factors appropriate under the Guidelines or § 3553(a), most likely the court will not have been able to "unring the bell," and ipso facto the defendant will have been prejudiced by the error. *Id.* In other words, when a district court relies on mere arrests to determine a sentence, it is likely to engage in the kind of "unsupported speculation" forbidden in *Berry* and *Mateo-Medina* and thus to commit "plain error that affects substantial rights." Fed. R. Crim. P. 52(b).

B

According to Ferguson, the District Court relied on his bare arrest record to determine his consecutive sentence of 24 months' imprisonment. In support of this argument, he cites the Court's reference to his arrests in its recitation of his criminal history, which in turn he asserts factored into the sentencing decision. The Court's mention of these arrests, preceded by its observation that "the defendant has a long and serious criminal history," App. 25, suffices, on Ferguson's view, to establish that these arrests affected the Court's sentencing decision, rendering his sentence unconstitutional. We disagree.

The district courts in *Mateo-Medina* and *Berry* erred not because they mentioned prior arrests, but because they relied on them. Accepting Ferguson's invitation to infer such reliance from any reference to bare arrests, without considering the full context of the reference, would be both illogical and inconsistent with the deference we owe district courts' sentencing decisions, which are by their nature individualized and context-specific. *See, e.g.*, *United States v. Bungar*, 478 F.3d 540, 543 (3d Cir. 2007) (noting that

10

appellate courts adopt a "highly deferential" stance toward district courts' application of the § 3553(a) factors (citation omitted)). In order to show plain error, Ferguson must therefore bridge the gap between reference and reliance. It does not suffice merely to compare, as Ferguson does, the District Court's reference to his arrest record to the remarks made by the sentencing judges in *Mateo-Medina* and *Berry*. Ferguson correctly observes that, at least in isolation, the District Court's reference to his arrest record contains echoes of the references we found problematic in those cases. But those references were problematic only insofar as they indicated actual reliance by the court on the arrests when determining a sentence.

In this appeal, we are not persuaded that the District Court actually relied on Ferguson's arrests in determining his sentence. It is true that the Court mentioned the arrests in its recitation of Ferguson's "long and serious criminal history." App. 25. But that characterization of his criminal history was accurate regardless of the arrests, as made abundantly clear by the many convictions and adjudications of delinquency the Court had noted just seconds before it mentioned Ferguson's arrest record. Beginning at the age of 13 in 1979, Ferguson was adjudicated delinquent on six occasions as a minor and went on to accumulate six adult convictions, including serious crimes like robbery and drug trafficking offenses, prior to his federal conviction for possession of a firearm by a felon and his state conviction for sexual assault, which triggered the supervised release violation in this case. After reciting this criminal history, which by any definition would qualify as "long and serious" on its own, the District Court mentioned, without emphasis or reliance, Ferguson's five prior arrests for

11

burglary, possession of an instrument of crime, criminal conspiracy, and homicide.

In contrast to the sentencing transcript in this appeal, arrests not leading to convictions were central to the sentencing decisions we vacated in *Berry* and *Mateo-Medina*. The district court in *Berry*, faced with two defendants with no adult convictions, used the fact of their arrests to "read[] between the lines." 553 F.3d at 277. Based on the arrests alone, it found that their "criminal history points" probably understated their propensity to commit crimes. *Id.* at 279. And had those arrests not been deemed evidence of criminality, the court's sentencing decision might well have turned out differently. Similarly, in *Mateo-Medina* it was evident that the arrests influenced the court's sentencing calculus because they were essential to its finding that the defendant had a "rather extensive . . . interaction with the criminal justice system," 845 F.3d at 549.

Ferguson is right to note that—despite the tradition of deference to sentencing courts' ability to examine all relevant information—the "rule of *Berry* and *Mateo-Medina* exists for good reason." Ferguson Br. 9. But fidelity to that rule does not compel a reflexive inference that the mere recognition of a defendant's arrest record tainted his sentencing hearing. Unable to point to any evidence beyond the District Court's mere mention of his arrest record, Ferguson has not shown error, much less plain error.

Our conclusion that there was no error in this case is not the result of a requirement that "a record . . . be explicit in showing that a defendant's bare arrest record contributed to the sentence," as Ferguson characterizes the Government's position. Reply Br. 1–2. But just as such reliance need not be

12

made explicit in order to constitute error, the inverse rule Ferguson appears to advocate—wherein any reference to prior arrests not leading to conviction is plain error, no matter how insignificant in context—is equally unwarranted. As we have explained, whether a district court has run afoul of the principles we articulated in *Berry* and *Mateo-Medina* is a question that cannot be divorced from the facts and circumstances of each sentencing hearing.

## IV

For the reasons stated, the District Court did not plainly err when it mentioned Ferguson's prior arrest record. Accordingly, we will affirm its judgment of sentence.

13