**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 24-3097

———————

UNITED STATES OF AMERICA

v.

STACY GALLMAN,
                    Appellant

———————————

Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 1:24-cr-00516-001)
District Judge:  Honorable Christine P. O'Hearn

———————————

Submitted under Third Circuit L.A.R. 34.1(a)
on June 26, 2025

Before: MONTGOMERY-REEVES, ROTH and AMBRO, Circuit Judges

(Opinion filed: March 26, 2026)

———————

OPINION*

———————

ROTH, <u>Circuit Judge</u>

———————————

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Stacy Gallman appeals his revocation sentence and challenges the District Court's imposition of certain special conditions of his supervised release.

**I.**

In September 2024, the United States Probation Office for the District of New Jersey petitioned to revoke Gallman's supervised release.[1]  The alleged violations included:  (1) the commission of another federal, state, or local crime, *e.g.*, aggravated assault of his pregnant girlfriend, Nicole Bullock; (2) unlawful use of a controlled substance, *i.e.*, marijuana; and (3) failure to report to his probation officer as instructed. The first was a Grade A violation, while the others were Grade C violations.

The next month, Gallman represented himself at his revocation hearing.  The government called Bullock and Gallman's probation officer as witnesses.  Bullock testified that, in July 2024, Gallman assaulted her while she was in his car.  She stated that Gallman had slapped her in the face and said "everybody about to die" before driving off and refusing to let her exit the vehicle.[2]  As he drove, he pulled her hair and punched her in the face "about three times."[3]  Eventually, Bullock was able to jump into the backseat and escape Gallman's car.  She went to the hospital for treatment, partly because she worried she would have a miscarriage due to her injuries.[4]  She later reported the

---

[1] Gallman was on supervised release for an 18 U.S.C. § 922(g)(1) conviction in Philadelphia.  He commenced his term of supervised release in March 2023, and was initially supervised in the Eastern District of Pennsylvania.  In July 2024, the District of New Jersey began courtesy supervision over his case and formally assumed jurisdiction the following month.

[2] Appx35.

[3] Appx37.

[4] Later, during his sentencing allocution, Gallman stated that Bullock had lost the baby

assault to police.

After the Government rested its case, Gallman testified in his own defense. He disputed his alleged failure to report but admitted to using marijuana. As for the Grade A violation, he denied assaulting Bullock and testified about "all the things that occurred" that day in his car.[5] He indicated that the reason for their argument was Bullock's negative comment about the size of his penis.

The court reminded him to limit his testimony to the facts, but Gallman insisted that his testimony was "very relevant."[6] He continued that he had to have respect and if he wasn't respected, "I start slapping bitches."[7] Gallman never denied driving away with Bullock in his car and instead said that she "had more than enough time to . . . get out" before he drove away, and that she did not get out because "[s]he want[ed] to be an asshole and sic her cousin on me."[8] His testimony contained numerous expletives and explicit descriptions.

The District Court found that Gallman had committed all three violations. The court credited the probation officer's testimony and found Gallman had failed to report as

---

and texted his mother, "your son the reason I lost the baby." Appx104–105. Gallman disputed her accusation. We have not factored Gallman's statement or Bullock's accusation into our decision on appeal. We have considered only that Bullock was pregnant at the time of the assault and that she was concerned about miscarriage resulting from the assault.

[5] Appx86.

[6] Appx85–86.

[7] Appx86–87.

[8] Appx87. According to Gallman, he drove away because Bullock had called her cousin over to Gallman's car and "yell[ed] out the window, hey, he [Gallman] said he's going to slap me, get him." Appx87. Gallman said he was worried her cousin was armed. The District Court did not credit this testimony.

instructed. The court also found that he had unlawfully used marijuana based on his own admission and a positive urinalysis report. As for the Grade A violation, the court specifically found that Bullock had "testified credibly," whereas Gallman had not.[9]

The court proceeded immediately to sentencing. The applicable Sentencing Guideline range was 15 to 21 months for the Grade A violation, and 4 to 10 months for the Grade C violations. The government asked for a 15-month prison sentence, followed by 21 months of supervised release with special conditions requiring treatment for substance abuse, anger management, and mental health, as well as consent to search and no contact with the victim. Gallman responded with expletive-laden arguments asserting his innocence and accusing Bullock and his probation officer of lying. He denied having anger issues.

Before imposing the sentence, the District Court mentioned Gallman's underlying 18 U.S.C. § 922(g)(1) conviction and reiterated that the court had "already found him guilty with respect to . . . the domestic violence incident" and the other two violations.[10] It also recited his bare arrest record. The court identified the correct Guidelines ranges based on the Grade A and Grade C violations and Gallman's criminal history category. The court then stated that it "ha[d] considered all of the [18 U.S.C. §] 3553(a) factors, including the nature and circumstances of the offenses, the history and characteristics of the defendant, and the need for any correctional treatment, medical treatment or et

---

[9] Appx99.
[10] Appx107.

cetera."[11]  After a brief pause to "check something on the guideline," the court revoked

Gallman's supervised release and sentenced him to a total of 15 months' imprisonment,

followed by 21 months of supervised release with special conditions relating to substance

abuse treatment, mental health treatment, consent to search, no contact with Bullock, and

life-skills training.[12]

After imposing his sentence, the court asked Gallman if he had any objections, but

then interrupted him once he told the court, "[A]l the charges that you mentioned was

dismissed."[13]  The court adjourned the hearing before Gallman could elaborate on this.

## II.[14]

Ordinarily, we review unpreserved challenges to revocation sentences for plain

error.[15]  However, where, as here, a district court's "abrupt termination of the sentencing

proceeding" deprives the defendant of a chance to properly object, we may excuse the

lack of an objection.[16]  In these circumstances, we review for abuse of discretion.[17]  We

apply the same standard when reviewing the imposition of supervised release conditions.

## III.

Gallman argues that the District Court committed reversible error in relying on his

---

[11] Appx107.
[12] Appx108–09.
[13] Appx109.
[14] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.
[15] *See United States v. Valentin*, 118 F.4th 579, 590 n.19 (3d Cir. 2024).
[16] *See United States v. Fernandez-Garay*, 788 F.3d 1, 4 (1st Cir. 2015); *see also* Fed. R. Crim. P. 51(b) ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party.").
[17] *See Fernandez-Garay*, 788 F.3d at 3–4.

bare arrest record in fashioning his bottom-of-the-Guidelines sentence.

A sentencing court risks procedural error when it refers to the defendant's bare arrest record,[18] even if the court imposed a bottom-of-the-Guidelines sentence.[19] However, we will not reverse unless the court "actually relied on [the defendant's] arrests in determining his sentence."[20] Mere recitation of the arrest record is not enough.[21] The burden is on the defendant to "bridge the gap between reference and reliance."[22] We must "carefully examine[ ] the court's statements in context to discern whether or not it actually relied on [his] arrest record."[23]

The District Court's brief statement of reasons makes this a close issue, but we conclude that Gallman has not demonstrated that the District Court relied upon, rather than simply recited, his arrest record. Gallman has not shown that the court drew any inferences from his record, used it to undermine a colorable mitigation argument or as the crucial or sole sentencing factor, or relied on it to conclude that he warranted a bottom-of-the-Guidelines sentence and not a downward variance.[24] Thus, because he has not

---

[18] *See United States v. Berry*, 553 F.3d 273, 281–82 (3d Cir. 2009) (holding that "unsupported speculation about a defendant's background" based on his bare arrest record raises due-process concerns); *see also United States v. Mateo-Medina*, 845 F.3d 546, 550 (3d Cir. 2017) (recognizing that "a district court's consideration, even in part, of a bare arrest record is plain error"). *But see United States v. Ferguson*, 876 F.3d 512, 516 (3d Cir. 2017) ("The district courts in *Mateo-Medina* and *Berry* erred not because they mentioned prior arrests, but because they relied on them").

[19] *See United States v. Mitchell*, 944 F.3d 116, 122 n.41 (3d Cir. 2019).

[20] *See Ferguson*, 876 F.3d at 517.

[21] *See id.* at 516–18.

[22] *Id.* at 517.

[23] *See id.* at 516.

[24] *See Mitchell*, 944 F.3d at 122; *Mateo-Medina*, 845 F.3d at 549, 551–52; *Berry*, 553 F.3d at 277–84.

shown that his arrest record was "central to the sentencing decision[ ]," the District Court's mention of Gallman's arrests was not an abuse of discretion.[25]

## IV.

Gallman also argues that the District Court abused its discretion by failing to adequately state the reasons for imposing a bottom-of-the-Guidelines sentence. We disagree. In sentencing a defendant after revoking his supervised release, a district court must consider the applicable § 3553(a) factors set forth in 18 U.S.C. § 3583(e).[26] The court must also "state in open court the reasons for its imposition of the particular sentence."[27] "Because of the 'fact-bound nature of each sentencing decision,' there is no 'uniform threshold' for determining whether a court has supplied a sufficient explanation for its sentence."[28] "[T]he sentencing judge need only 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'"[29] It is well settled that "[i]n some cases a brief statement will suffice."[30]

Although the District Court's acknowledgement of the relevant factors alone was

---

[25] *See Ferguson*, 876 F.3d at 517.

[26] *See Esteras v. United States*, 606 U.S. 185, 197 (2025) (holding that "district courts cannot consider § 3553(a)(2)(A) when deciding whether to revoke supervised release"); *see also United States v. Clark*, 726 F.3d 496, 502 (3d Cir. 2013).

[27] 18 U.S.C. § 3553(c); *see also United States v. Miqbel*, 444 F.3d 1173, 1177–81 (9th Cir. 2006) (applying § 3553(c) to revocation sentencing).

[28] *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010) (quoting *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc)).

[29] *Chavez-Meza v. United States*, 585 U.S. 109, 113 (2018) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

[30] *See United States v. Thornhill*, 759 F.3d 299, 311 (3d Cir. 2014).

not enough, we are satisfied, based on our review of the whole record, that the court meaningfully considered the pertinent 3553(a) factors and exercised independent judgment in sentencing Gallman.[31] Gallman contends that he made "arguments in mitigation,"[32] but he did not raise a colorable argument for a downward variance or present any evidence that would support one.[33]

With no colorable argument for a downward variance, Gallman's case was simple, and there was no need for more than a brief statement by the District Court. In sum, the District Court provided a brief but adequate explanation for a bottom-of-the-Guidelines sentence.[34]

## V.

Gallman's last argument is that the special conditions of his supervised release must be vacated because the District Court failed to provide any explanation for them, and the record does not support their imposition. Sentencing courts "have broad discretion in fashioning special conditions," provided they are "'reasonably related' to the

---

[31] *See United States v. Olfano*, 503 F.3d 240, 245 (3d Cir. 2007) ("While a listing of factors may not, alone, be sufficient to demonstrate the necessary consideration of relevant factors, the record as a whole does indicate such consideration in this case."); *but see United States v. Ausburn*, 502 F.3d 313, 331 (3d Cir. 2007) ("Where the record is inadequate, we do not fill in the gaps by searching the record for factors justifying the sentence.").

[32] Appellant Br. at 18.

[33] For example, Gallman's admission to the marijuana use does not qualify as acceptance of responsibility, as he did so only after he put the prosecution to its burden of proving the violation. *Cf. United States v. DeLeon-Rodriguez*, 70 F.3d 764, 767 (3d Cir. 1995) (explaining that a downward departure for acceptance of responsibility "is generally not meant to apply to a defendant who puts the government to its burden of proof at trial").

[34] *See Olfano*, 503 F.3d at 244–45.

factors set forth in 18 U.S.C. § 3553(a)" and involve "'no greater deprivation of liberty than is reasonably necessary' to deter future criminal conduct, protect the public, and rehabilitate the defendant."[35] A court abuses its discretion by failing to explain its reason for imposing a condition, but we "may affirm a special condition if there is any 'viable basis' for the condition in the record."[36]

We agree with Gallman that the District Court abused its discretion in failing to state its reasons for imposing the challenged special conditions. However, the support for these conditions is so apparent from the record that we are compelled to affirm them.

## VI.

For the above reasons, we will affirm the District Court's judgment of sentence.

---

[35] *United States v. Maurer*, 639 F.3d 72, 82-83 (3d Cir. 2011) (quoting 18 U.S.C. § 3583). "Reasonably related" means "related in a 'tangible way' to the crime or to something in the defendant's history." *United States v. Pruden*, 398 F.3d 241, 249 (3d Cir. 2005) (quoting *United States v. Evans*, 155 F.3d 245, 249 (3d Cir. 1998)).
[36] *Santos Diaz*, 66 F.4th at 448 (quoting *United States v. Voelker*, 489 F.3d 139, 144 (3d Cir. 2007)).