**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1095
_____

UNITED STATES OF AMERICA

v.

TYRONE MITCHELL,
a/k/a Fox

Tyrone Mitchell,
                    Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cr-00172-001)
District Judge: Hon. Paul S. Diamond
_____

Argued March 14, 2019
_____

Before: McKEE, ROTH, and FUENTES, *Circuit Judges*.

(Filed: December 5, 2019)
_____

Lisa Van Hoeck [Argued]
Office of the Federal Public Defender
22 South Clinton Avenue
Station Plaza #4, 4th Floor
Trenton, NJ 08609

      *Counsel for Appellant*

Robert A. Zauzmer [Argued]
Randall Hsia
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

      *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

A jury found Tyrone Mitchell guilty of seventeen drug distribution and firearms offenses. Mitchell appeals his judgment of conviction and sentence of 1,020 months' imprisonment, raising eight arguments nearly all of which are unavailing. We do, however, agree with Mitchell as to one sentencing-related argument—that the District Court plainly erred by relying on Mitchell's bare arrest record to determine his sentence. We therefore affirm Mitchell's judgment of

conviction, vacate the judgment of sentence, and remand for resentencing.

## I.

## A.

In May and July 2010, a confidential informant working with agents of the Pennsylvania Attorney General's Office, Bureau of Narcotics Investigation, made three controlled purchases of phencyclidine ("PCP") from Mitchell. Before making each purchase, the informant would arrange to meet Mitchell at a specific location in Philadelphia, and agents would conduct surveillance of both the meeting location and Mitchell. During this surveillance, agents observed Mitchell or one of his associates traveling between the meeting location and properties located at 3153 North Carlisle Street ("Carlisle Street") and 3248 Goodman Street ("Goodman Street").[1] They also observed Mitchell using keys to enter and exit those properties. Based on the controlled purchases and surveillance, agents obtained and executed search warrants for the properties at Carlisle Street and Goodman Street.

---

[1] The Carlisle Street property was owned by an individual named Geraline Ashmore, and the Goodman Street property was owned by TSM Property Group, LLC, a company which had no reported income between 2009 and 2011 and was owned by Mitchell's wife.

### i. Search of Carlisle Street Property

Before executing the warrant at the Carlisle Street property, agents saw Mitchell leave the property and enter a blue Dodge minivan. Agents blocked the minivan and then placed Mitchell under arrest.[2] During a search incident to arrest, agents found keys to the Carlisle Street property, keys to the Goodman Street property, and $2,947 in cash on Mitchell's person.

Inside the Carlisle Street property, agents recovered, among other things, a loaded .357 caliber handgun hidden in a lazy boy recliner, a box of .357 caliber bullets, a photograph of Mitchell and an unidentified male, $350 in cash, 95 grams of crack cocaine, 6.9 grams of marijuana, and drug paraphernalia. At trial, Alfred Jenkins testified that he purchased powder cocaine from Mitchell on a weekly basis between 2009 and May 2011 at different locations including the Carlisle Street property. Jenkins further testified that on occasion, Mitchell would instruct him to go to Carlisle Street and purchase cocaine there from Warren Lawson, an individual who agents found sitting on the lazy boy recliner when they executed the search warrant.[3]

---

[2] Mitchell was initially charged with local offenses in the Philadelphia Court of Common Pleas. He was in local custody from July 21, 2010 to October 25, 2010, the date on which he made bail. Mitchell was subsequently arrested on January 17, 2013 and charged with the federal offenses underlying this case. The local charges were eventually dismissed.

[3] Lawson did not testify at trial.

4

### ii. Search of Goodman Street Property

On that same day, agents executed a search warrant at the Goodman Street property, another property from which Jenkins had purchased cocaine from Mitchell. Once inside, the agents found, among other things, a .44 caliber loaded handgun beneath a pile of clothes and blankets, a photograph of Mitchell, a billing statement addressed to Mitchell at that address, keys with a tag labelled 2447 Firth Street, drug paraphernalia, and six small glass jars containing about 131 grams of PCP.

**B.**

Over a year later, based on information learned from Jenkins, agents conducted surveillance of 2447 West Firth Street ("Firth Street"), another property where Jenkins had purchased cocaine from Mitchell.[4] On October 11, 2011, agents saw an individual named Dante Black enter and exit the Firth Street property with the use of a key. Two days later, agents saw Black allow an individual later identified as Curtis Williams inside the house. Williams left the house about fifteen minutes later. Agents subsequently stopped Williams and confiscated about five grams of cocaine from him. They also stopped Black after he left the house and detained him while they obtained a search warrant. Agents searched Black and recovered a cell phone, keys to the Firth Street property, and money.

---

[4] This investigation was a joint investigation with the FBI. *Id.* at 963.

5

### i. Search of Firth Street Property

After obtaining the search warrant, agents entered the Firth Street property, which was owned by TSM Property Group, the company owned by Mitchell's wife. In the property, agents found, among other things, a loaded .40 caliber semi-automatic Glock handgun in a couch cushion, a spare magazine for the Glock pistol, numerous photographs of Mitchell, cocaine, crack, oxycodone tablets, marijuana drug paraphernalia, a notepad containing drug tally work with Mitchell's alias on the back, and cash.

At trial, Black testified that he had been living in the Firth Street house with Mitchell since late August, early September 2011. Black stayed in the second-floor back room and Mitchell stayed in the second-floor front room—the room where agents had found the spare magazine for the gun and photographs of Mitchell including one which had a note on the back addressed to one of Mitchell's aliases. Black recalled that he and Mitchell stored drugs in the house including cocaine, crack cocaine, marijuana, and Percocet pills, and they would each sell drugs on a daily basis. According to Black, prior to moving in with Mitchell, he would purchase cocaine powder and crack cocaine from Mitchell and would resell them to his customers. Black acknowledged that (1) he continued to do so when he was living in the Firth Street house, and (2) on Mitchell's instructions, he also sold drugs to Mitchell's customers when Mitchell was away from the house.

Black testified that there was a Glock .40 pistol in a couch in the living room—the same gun that police found

during the execution of the search warrant.[5] According to Black, Mitchell placed the gun in the couch. Black also stated that it was Mitchell's idea to get a gun for the purpose of protecting themselves and the drugs in the house, and Mitchell reimbursed him for the cost of the gun.

## II.

In December 2013, Mitchell was indicted on seventeen counts: one count of conspiracy to distribute 500 grams or more of cocaine[6] (Count 1); four counts of distribution of cocaine[7] (Counts 2-5); three counts of maintaining a house for drug distribution[8] (Counts 6, 10, and 14); one count of possession of 28 grams or more of cocaine base ("crack") with intent to distribute, and aiding and abetting such possession[9] (Count 7); two counts of possession of a firearm in furtherance of a drug trafficking crime, and aiding and abetting such possession[10] (Counts 8 and 16); three counts of possession of a firearm by a convicted felon[11] (Counts 9, 13,

---

[5] Black's testimony was corroborated by Jenkins' testimony. Jenkins similarly testified that he had seen a firearm in the Firth Street property.

[6] 21 U.S.C. § 846.

[7] *Id.* § 841(a)(1).

[8] *Id.* § 856(a)(2). Count 6 relates to the Firth Street property, Count 10 relates to the Carlisle Street property, and Count 14 relates to the Goodman Street property.

[9] *Id.* § 841(a)(1); 18 U.S.C. § 2.

[10] 18 U.S.C. §§ 2, 924(c)(1). Count 8 relates to the firearm found in the Carlisle Street property and Count 16 relates to the firearm found in the Firth Street property.

[11] *Id.* § 922(g)(1).

and 17); one count of possession of 100 grams or more of PCP with intent to distribute[12] (Count 11); one count of possession of a firearm in furtherance of a drug trafficking crime[13] (Count 12); and one count of possession of at least 28 grams of crack and 500 grams of cocaine with intent to distribute, and aiding and abetting such possession[14] (Count 15).

After a seven-day trial in October 2015, a jury found Mitchell guilty of all seventeen counts. Mitchell then filed a motion for a judgment of acquittal, or in the alternative, for a new trial, which the District Court denied. The District Court ultimately sentenced Mitchell to 1,020 months' (85 years') imprisonment followed by 8 years of supervised release.[15]

---

[12] 21 U.S.C. §§ 841(a)(1), (b)(1)(B).

[13] 18 U.S.C. § 924(c)(1). Count 12 relates to the firearm found in the Goodman Street property.

[14] 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C), (b)(1)(D); 18 U.S.C. § 2.

[15] Mitchell was sentenced to 360 months' imprisonment on Counts 1, 2, 3, 4, 5, 7, 11, and 15, 240 months' imprisonment on Counts 6, 10, and 14, and 120 months' imprisonment on Counts 9, 13, and 17, to be followed by a consecutive 60 months' imprisonment on Count 8, a consecutive 300 months' imprisonment on Count 12, and a consecutive 300 months' imprisonment on Count 16.

Pursuant to 18 U.S.C. § 924(c)(1)(A)(i), for the first count of possession of a firearm in furtherance of a drug trafficking crime (Count 8), the District Court imposed a mandatory minimum sentence of 5 years. For the second and third firearm counts (Counts 12 and 16), the Court imposed

Defendant now appeals the judgment of conviction and sentence.

## III.[16]

In this appeal, Mitchell challenges both his conviction and sentence of 1,020 months' imprisonment. He presents four arguments as to why his conviction should be vacated, and four arguments as to why his sentence should be vacated.

Regarding his conviction, Mitchell maintains that: (1) the District Court violated his Sixth Amendment right to a fair trial before an impartial jury by failing to investigate possible juror bias; (2) the District Court's admission of certain statements violated the rule against hearsay and his rights under the Confrontation Clause; (3) the District Court plainly erred by failing to instruct the jury that aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime requires that the accomplice have advance knowledge that the principal would possess a gun, as required by *Rosemond v. United States*;[17] and (4) the Government presented insufficient evidence that he aided and abetted Lawson's possession of a loaded .357 caliber firearm in furtherance of distribution of crack at Carlisle Street, or constructively possessed the firearm. We have carefully considered Mitchell's arguments regarding his conviction and

---

two 25-year sentences as required by 18 U.S.C. § 924(c)(1)(C).

[16] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

[17] 134 S. Ct. 1240 (2014).

find them to be without merit. Accordingly, we affirm Mitchell's judgment of conviction.

As to his sentence, Mitchell argues that: (1) the District Court plainly erred by relying on his bare arrest record at sentencing; (2) the District Court erred in concluding that he qualified as a career offender under the Sentencing Guidelines; (3) we should remand for resentencing in light of the Supreme Court's 2017 decision in *Dean v. United States*;[18] and (4) his 55-year mandatory consecutive sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment. We have examined each of Mitchell's arguments and find nearly all of them to be meritless. However, for the reasons set forth below, we agree with Mitchell that the District Court plainly erred by relying on Mitchell's bare arrest record to determine his sentence. We will therefore vacate and remand for resentencing.[19]

Under the Due Process Clause, "[a] defendant cannot be deprived of liberty based upon mere speculation."[20] Accordingly, in determining a sentence, although a court can mention a defendant's record of prior arrests that did not lead to conviction, it cannot rely on such a record.[21] As we

---

[18] 137 S. Ct. 1170 (2017).

[19] We do not take a position on the merits of Mitchell's argument that the District Court erred in concluding that he qualified as a career offender under the Sentencing Guidelines. Mitchell can renew this contention before the District Court on remand.

[20] *United States v. Berry*, 553 F.3d 273, 284 (3d Cir. 2009).

[21] *See id.*

10

recognized in *United States v. Berry*, "a bare arrest record—without more—does not justify an assumption that a defendant has committed other crimes."[22]

Here, the Presentence Investigation Report ("PSR") calculated Mitchell's criminal history category as VI. According to the PSR, 50-year-old Mitchell had 7 juvenile adjudications and 6 prior adult convictions, including 2 Pennsylvania convictions for robbery and 1 federal conviction for conspiracy to distribute cocaine. The PSR also listed Mitchell's arrests that did not lead to conviction. From the age of 18 to 46, Mitchell had a total of 18 arrests. The PSR listed 1 arrest related to "Other Criminal Conduct,"[23] 2 arrests related to "Pending Charges,"[24] and 15 "Other Arrests."[25] Notably, the PSR did not contain any information about the underlying facts or circumstances of 17 of those 18 arrests.[26]

At sentencing, defense counsel did not discuss Mitchell's criminal history. He only noted that the Guidelines

---

[22] *Id. See United States v. Ferguson*, 876 F.3d 512, 515 (3d Cir. 2017) (recognizing that it is a court's "reliance on an arrest record bereft of facts, and thus resulting in unsupported speculation, that raises due process concerns").

[23] PSR ¶ 50.

[24] *Id.* at ¶ 51.

[25] *Id.* at ¶ 52.

[26] The PSR only provided information for a 1984 arrest for possession with intent to distribute a controlled substance and possession of a controlled substance.

11

numbers were "staggering."[27] Thereafter, the prosecutor mentioned Mitchell's criminal history and stated:

> [s]ince the age of 18, since 1984, [Mitchell] has not gone more than three years without some sort of criminal contact. He has two prior felony drug convictions. He has a theft conviction and two robbery convictions. . . .
>
> Furthermore, he was on probation for a robbery conviction when he committed these current crimes.
>
> [Mitchell] has demonstrated by his conduct, both previously and in this case, that he has zero respect for the law.[28]

While the prosecutor was speaking, the District Court interrupted him, emphasizing that it "count[ed] seven adjudications, six adult convictions, and eighteen other arrests."[29] The prosecutor responded: "I think that's accurate, Your Honor."[30]

Thereafter, in calculating Mitchell's sentence, the District Court relied in part on Mitchell's record of arrests

---

[27] App. 1409. The resulting Guidelines range was 360 months' to life imprisonment. However, given Mitchell's three § 924(c) convictions, the effective Guidelines range was 1,020 months' to life imprisonment.

[28] *Id.* at 1411-12.

[29] *Id.* at 1411.

[30] *Id.* at 1412.

12

that did not lead to conviction. Specifically, after (1) describing Mitchell's juvenile adjudications and adult convictions, and (2) enumerating each of Mitchell's 18 arrests without mentioning the details of disposition, the Court stated, in relevant part:

> *[t]his is as long and serious of [a] criminal record as I've seen in twelve and a half years on the bench.* I'm not sure what [Mitchell] was referring to when he talked about the crimes committed against him,[31] but I certainly know the crimes he is convicted of committing and the crimes he was adjudicated delinquent for committing, *as well as the crimes he was arrested for*.

> I consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment or for adequate deterrence [of] criminal conduct, to promote and to protect the public from further crimes [Mitchell] might commit.

> It is perfectly apparent that [Mitchell] has absolutely no respect for the law at all. And if

---

[31] The District Court was presumably referring to Mitchell's allocution during which he said: "I never intended to present myself as an innocent in the world[,] for the truth is, I am guilty of some crimes against the society from which I come, just as true is that the society from which I come is guilty of some crimes against me." *Id.* at 1410.

he remains at liberty, his criminal record will simply go on.

I have considered the need to provide [Mitchell] with educational, vocational training and medical care. . . . From his statement, his allocution, it is perfectly clear that [Mitchell] is . . . a very bright individual. It is a pity that he did not turn his intelligence to legitimate efforts, and instead, appears to have turned him exclusively to breaking the law.[32]

The District Court then referenced defense counsel's sentencing memorandum and comments at sentencing. Speaking directly to defense counsel, the Court stated, in relevant part: "[y]ou have indicated that the . . . guideline numbers are staggering and I agree they are, but so is your client's criminal record."[33] Immediately following that statement, the Court sentenced Mitchell to a total term of 1,020 months' imprisonment followed by 8 years of supervised release. In the Court's Statement of Reasons, "extensive criminal history" is the only justification given for the sentence.[34]

On appeal, Mitchell correctly points out "[t]he Court drew no distinction between adjudications, adult convictions, and arrests in making the claim that Mitchell's record was 'as long as serious' as the court had seen in 'twelve and a half

---

[32] *Id.* at 1416-17 (emphasis added).
[33] *Id.* at 1417-18.
[34] Statement of Reasons at 2.

years on the bench.'"[35] Likewise, in its Statement of Reasons, in stating that Mitchell's "extensive criminal history" justified his sentence, the Court did not distinguish between adjudications, adult convictions, and adult arrests.[36]

Contrary to the Government's assertions, Mitchell did not just demonstrate that the District Court "noticed that he had a number of arrests that did not result in convictions."[37] To the contrary, Mitchell has "bridge[d] the gap between reference and reliance," and has thus shown plain error.[38] Looking at the record below in its entirety, we conclude that the District Court improperly relied on Mitchell's bare arrest record in determining his sentence. For example, the Court interrupted the prosecutor to highlight Mitchell's arrests and later recited all 18 of Mitchell's arrests. The Court also explicitly referred to Mitchell's arrests when describing his "long and serious"[39] criminal record and identified Mitchell's "extensive criminal history"[40] as the sole justification for his sentence. Resentencing is therefore required.[41]

---

[35] Def. Br. 53 (quoting App. 1416).

[36] Statement of Reasons at 2.

[37] Gov't. Br. 69.

[38] *Ferguson*, 876 F.3d at 517. *See United States v. Mateo-Medina*, 845 F.3d 546, 550 (3d Cir. 2017) (footnote omitted) (stating that "our precedent clearly demonstrates that a district court's consideration, even in part, of a bare arrest record is plain error").

[39] App. 1416.

[40] Statement of Reasons at 2.

[41] We note that although Mitchell was sentenced at the lowest end of the Guidelines range on the non-§ 924(c) counts, we have emphasized that "[t]he Guidelines are, after all, *purely advisory,* and unsupported speculation about a defendant's

15

**IV.**

For the reasons stated, we will affirm the District Court's judgment of conviction, vacate the judgment of sentence, and remand to the District Court for resentencing.[42]

---

background is problematic whether it results in an upward departure, denial of a downward departure, or causes the sentencing court to evaluate the § 3553(a) factors with a jaundiced eye." *Berry*, 553 F.3d at 281 (citing *United States v. Booker*, 543 U.S. 220 (2005)).

[42] Post-oral argument, counsel for Mitchell filed a motion for leave to file a supplemental brief raising a new sentencing-related issue: whether Mitchell is eligible for a reduction of sentence under the First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). In light of our decision to remand the case for resentencing, we will deny the motion without prejudice to Mitchell's ability to renew that argument before the District Court.