**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2493
_____


UNITED STATES OF AMERICA

v.

TYRONE MITCHELL,
a/k/a Fox,

Appellant

_____


Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-12-cr-00172-001)
District Judge: Honorable Paul S. Diamond

_____


Argued on January 11, 2022

Before: AMBRO, BIBAS, and ROTH, *Circuit Judges*

(Opinion filed: June 29, 2022)

Peter Goldberger            **[ARGUED]**
Pamela A. Wilk
50 Rittenhouse Place
Ardmore, PA 19003
            *Counsel for Appellant*

Emily McKillip
Robert A. Zauzmer            **[ARGUED]**
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
            *Counsel for Appellee*

------

OPINION OF THE COURT

------

**ROTH**, *Circuit Judge*.

In 2018, the President signed the First Step Act, bipartisan legislation implementing long-sought-after criminal-justice reform. In this appeal, we must decide how the First Step Act affects Tyrone Mitchell's sentence for various drug and gun-related offenses in violation of 18 U.S.C. § 924(c)(1). The complication in determining Mitchell's sentence arises from the fact that, after the Act's passage, we vacated Mitchell's sentence and remanded his case for resentencing because we concluded that, when the District Court sentenced Mitchell, it violated his procedural-due-

2

process rights.[1]

Generally, when Congress passes a statute that imposes a more lenient penalty, the retroactivity of that statute will be explicitly set forth in the statute's text.[2] In this regard, Congress chose to limit the benefits of the First Step Act. The Act applies, prospectively, to all offenses committed after the Act's enactment but, retroactively, "to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of [that] date."[3] We have interpreted this provision twice.[4] Both times, however, we declined to decide the full reach of the statute's retroactivity. Rather, we expressly left open the question: "Whether § 403 applies to a defendant whose sentence on § 924(c) counts is vacated and remanded for resentencing after the Act's enactment."[5]

---

[1] *United States v. Mitchell*, 944 F.3d 116, 120–22 (3d Cir. 2019).

[2] *See Dorsey v. United States*, 567 U.S. 260, 274 (2012) (citing 1 U.S.C. § 109).

[3] § 403(b), 132 Stat. at 5222; see also identical language in Section 401(c) of the First Step Act.

[4] *United States v. Hodge*, 948 F.3d 160, 163 (3d Cir. 2020), in which we held that the new § 924(c) mandatory minimum does not apply to a defendant, initially sentenced before the First Step Act's enactment, where the defendant's sentence is later modified after the First Step Act's enactment. *United States v. Aviles*, 938 F.3d 503, 510 (3d Cir. 2019), in which we held that under the First Step Act a sentence is imposed when a sentencing order is entered.

[5] *Hodge*, 948 F.3d at 163 n.4 (cleaned up); *Aviles*, 938 F.3d at 515 n.8.

This appeal requires that we answer that question.

A jury convicted Tyrone Mitchell of various drug-and-gun-related offenses, including two counts of possession of a firearm in furtherance of a drug-trafficking crime, and aiding and abetting such possession, in violation of § 924(c)(1). Later, we vacated Mitchell's sentence and remanded his case for resentencing because we concluded that, when the District Court sentenced Mitchell, it violated his procedural-due-process rights.

Mitchell now asks us to decide whether the Act's provisions may apply to a criminal defendant when a district court has imposed an unconstitutional sentence before the Act's enactment that we then vacated after its enactment. For the reasons set out below, we hold that in these circumstances, the provisions of the First Step Act do apply to the resentencing.[6]

I.

In October 2015, a jury convicted Mitchell of seventeen drug-and-gun related offenses.[7] The District Court sentenced Mitchell to 1,020 months' imprisonment.[8]

Mitchell appealed his conviction and sentencing; in his

---

[6] Because § 401(c) of the Act includes the same language as § 403(b), our holding here also applies for substantially the same reasons to Mitchell's sentencing governed by § 401(c).

[7] *Mitchell*, 944 F.3d at 119.

[8] *Id.*

4

appeal, he raised eight issues.[9] We rejected seven.[10] However, we held that one of Mitchell's arguments had merit: The District Court had violated Mitchell's procedural-due-process rights when it sentenced him.[11] In coming to this conclusion, we determined that a criminal "defendant cannot be deprived of liberty based upon mere speculation."[12] Here, the District Court plainly erred by imposing a sentence on Mitchell based on his arrest record: "a bare arrest record—without more—does not justify an assumption that a defendant has committed other crimes."[13] Because the District Court "explicitly referred to Mitchell's arrest[ record] when describing his long and serious criminal record and identified Mitchell's extensive criminal history as the sole justification for his sentence[,]"[14] the District Court's sentence violated Mitchell's constitutional right to due process of the law.[15] Accordingly, since the District Court had imposed an unconstitutional sentence, we vacated the judgment of sentence in 2019 and remanded the case to the District Court for resentencing.[16]

---

[9] *Id.* at 120.

[10] *Id.*

[11] *Id.*

[12] *Id.* (quoting *United States v. Berry*, 553 F.3d 273, 284 (3d Cir. 2009)).

[13] *Id.* (quoting *Berry*, 553 F.3d at 284); *id.* at 121–22; *see also United States v. Ferguson*, 876 F.3d 512, 515 n.1 (3d Cir. 2017) (noting that a district court's "reliance on an arrest record bereft of facts, and thus resulting in unsupported speculation, . . . raises due process concerns").

[14] *Mitchell*, 944 F.3d at 122 (cleaned up).

[15] *Id.* at 120, 122.

[16] *Id.* at 120, 122–23.

The District Court resentenced Mitchell in July 2020, after the passage of the Act. Due to the fact that the resentencing was post-enactment, the District Court held that Mitchell could not benefit from the Act's benefits. Thus, Mitchell received a mandatory-minimum sentence of fifty-five years' imprisonment for his three § 924(c) offenses rather than a sentence of fifteen years' imprisonment for these offenses pursuant to the provisions of the Act.[17] In total, the District Court resentenced Mitchell to 895 months' imprisonment. Mitchell appealed.

## II.[18]

### A.

Our first issue is whether § 403 of the Act should apply retroactively to Mitchell.[19] We begin with the text.[20] Section 403(b) states that the Act "shall apply to any offense that was committed before the date of enactment of th[e] Act, if a sentence for the offense has not been imposed as of such date

---

[17] *See* 132 Stat. at 5221–22; § 924(c)(1)(C).

[18] The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291. We apply plenary review to questions of law, including applications for relief under the First Step Act. *See, e.g.*, *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021).

[19] If applicable, § 403 would apply to Count Eight, Count Twelve, and Count Sixteen of the indictment, in which the government charged Mitchell under § 924(c).

[20] *FNU Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020).

of enactment."[21]   What does "impose a sentence" mean? Interpreting that language has vexed, and split, our sister circuits.[22]  Courts have interpreted these words in at least two ways.  One interpretation is that "impose a sentence" means any sentence, regardless of whether the sentence is vacated for violating the defendant's constitutional rights.   Another interpretation is that "impose a sentence" means a valid sentence that survives constitutional challenge on direct appellate review and is therefore not subject to a vacatur and full remand for resentencing.

We see how the statute plausibly could be read either

---

[21] § 403(b), 132 Stat. at 5222.

[22] *Compare United States v. Jackson*, 995 F.3d 522, 523–25 (6th Cir. 2021), *with United States v. Merrell*, — F.4th —, 2022 WL 2092588, at *4 (9th Cir. June 10, 2022), *and United States v. Uriarte*, 975 F.3d 596, 602–03 (7th Cir. 2020) (en banc), *and United States v. Bethea*, 841 F. App'x 544, 551 (4th Cir. 2021), *and United States v. Henry*, 983 F.3d 214, 227–28 (6th Cir. 2020).

way.[23]  For that reason, the statute is genuinely ambiguous. [24, 25]

Because the statute is ambiguous, we must decide how best to interpret it.  As we explain below, we interpret "impose a sentence" to mean a valid sentence, one that survives a constitutional challenge on direct appellate review and is therefore not subject to a vacatur and full remand for resentencing.  We do so for several compelling reasons.

---

[23] *See, e.g.*, *Uriarte*, 975 F.3d at 607 (Barrett, J., dissenting) (acknowledging that § 403(b)'s "grammatical structure conceivably leaves some room for either reading[ ]" of the statute).

[24] Although not dispositive, we find that the split among the courts of appeals informs our conclusion that § 403(b) involves a genuine ambiguity.  In all cases in which a court of appeals addressed the precise question before us, not one panel was unanimous.  This sheer volume of disagreement among many learned judges is evidence that the concept of "impose a sentence" in § 403(b) is ambiguous.

[25] Our precedential decisions construing the Act—*Hodge* and *Aviles*—expressly leave open the question presented by Mitchell's appeal.  *See Hodge*, 948 F.3d at 163 n.4; *Aviles*, 938 F.3d at 515 n.8.  Moreover, the original sentences imposed in both cases were constitutionally valid so today's question, as posed in *Hodges* and *Aviles*, was not yet ripe for decision in those cases.

First, our reading of the statute is more natural.[26, 27] Reading § 403(b) to apply to defendants whose sentences are vacated due to the sentence suffering from a constitutional defect is the best reading because "[t]here is no reason to think that Congress excluded from its remedy pre-Act offenders facing plenary resentencing."[28] Indeed, § 403(b) makes "no distinction between defendants who had never been sentenced and those whose sentence had been vacated fully and who were awaiting the imposition of a new sentence."[29] "In this way, Congress stanched, to the degree it could without overturning *valid and settled sentences*, the *mortmain* effect of sentencing policies that it considered no longer in the Nation's best

---

[26] *See, e.g.*, *Merrell*, 2022 WL 2092588, at *4–5; *Uriarte*, 975 F.3d at 603; *see also Bethea*, 841 F. App'x at 549 ("We conclude that [the defendant's] sentence is best understood as 'imposed' for purposes of the [Act] on the date of [the sentence's] reimposition, because the district court's vacatur render [the defendant's first] sentence a legal nullity.").

[27] We note that then-Judge Barrett, along with two of her colleagues on the United States Court of Appeals for the Seventh Circuit, dissented in *Uriarte* and stated that the more natural reading of "imposed . . . a sentence" is that the statute speaks only to the historical act of imposing an initial sentence; and therefore any later vacatur does not change the fact that a sentence—albeit a defective one—had already been imposed. *Uriarte*, 975 F.3d at 606–08 (Barrett, J., dissenting). We respectfully disagree. As the Seventh Circuit's en banc majority put it and as we explain more fully below, our reading of § 403(b) is "both straightforward and compatible with the purposes of the First Step Act." *Id.* at 601.

[28] *Uriarte*, 975 F.3d at 603.

[29] *Id.* at 601.

interest."[30] For these reasons, we agree with the Fourth, Seventh, and Ninth Circuit Courts of Appeals and join them in construing § 403(b) broadly.[31]

Second, we look to the legislative purpose of the Act.[32] The Act's purpose is obvious: to reduce the harsh length of sentences for certain crimes—in the case of § 403(b), the Act reduced the mandatory minimum sentence for certain firearms offenses.[33] As the Seventh Circuit Court of Appeals observed, reading the statute any other way would be "fundamentally at odds with the . . . Act's ameliorative nature."[34] When "construing a statute, courts ought not deprive it of the obvious meaning intended by Congress, nor abandon common sense."[35] Thus, when examined through the prism of Congress's purpose for passing the Act, our interpretation of the statute, which applies its provisions to defendants whose sentences are vacated due to constitutional defects and fully remanded for resentencing, would be correct.

Finally, our vacatur of Mitchell's sentence shows that Mitchell himself had no sentence at the time of his post-Act sentencing; thus, he should have received the Act's benefits. As we explained earlier, we vacated Mitchell's sentence

---

[30] *Id.* (emphasis added).

[31] *See Merrell*, 2022 WL 2092588, at *4; *Uriarte*, 975 F.3d at 602–03; *see also Bethea*, 841 F. App'x at 551.

[32] *See, e.g.*, *United States v. Moore*, 423 U.S. 122, 145 (1975).

[33] *See, e.g.*, *Merrell*, 2022 WL 2092588, at *5; *Uriarte*, 975 F.3d at 598.

[34] *Uriarte*, 975 F.3d at 603.

[35] *Id.* (quoting *United States v. Bhutani*, 266 F.3d 661, 666 (7th Cir. 2001)).

because, when the District Court sentenced him the first time, it violated his procedural-due-process rights.[36] Understanding the meaning of a vacatur is imperative to interpreting § 403(b) because our "elected representatives, like other citizens, know the law"[37] and thus, "[w]hen Congress crafted this statutory language, it well understood" what a vacatur meant.[38]

What is a vacatur? To vacate is "to cancel or rescind" and to "render an act void."[39] Thus, a vacatur "cancels" the previous sentence. A vacatur of a criminal sentence serves two functions. First, it recognizes that a district court violated the law by imposing the sentence. Second, it remedies the district court's ultra vires act by canceling the unlawful sentence and rendering the defendant unsentenced.

Supreme Court precedent supports this conclusion. As the Court said in *Pepper*, the act of vacating a sentence washes away the original sentence.[40] There, the United States Court of Appeals for the Eighth Circuit "set aside [the defendant's] *entire sentence* and remanded for a *de novo* resentencing."[41] The Supreme Court held that the full remand "effectively

---

[36] *Mitchell*, 944 F.3d at 120.

[37] *Cannon v. Univ. of Chi.*, 441 U.S. 677, 696–97 (1979).

[38] *Uriarte*, 975 F.3d at 601.

[39] *Vacate*, <u>Black's Law Dictionary</u> 1388 (5th ed. 1979). To be clear, "[a]s applied to a judgment or decree [the word 'vacate'] is not synonymous with 'suspend' which means to stay enforcement of judgment or decree." *Id.* Instead, vacating a judgment "cancel[s]" it or "render[s it] . . . void." *Id.*

[40] *Pepper v. United States*, 562 U.S. 476, 507 (2011).

[41] *Id.* (emphasis added).

11

wiped the slate clean."[42] That makes sense, the Court explained, because "a district court's original sentencing intent may be undermined by altering one portion of the calculus," and "an appellate court when reversing one part of a defendant's sentence may vacate the entire sentence . . . so that, on remand, the trial court can reconfigure the sentencing plan."[43]

What's more, our own precedent distinguishes between limited remands for resentencing and a vacatur that involves a full remand. We explained that "to the extent that a court remands for a limited resentencing proceeding, and not a *de novo* proceeding, limitations on the consideration of post-sentencing rehabilitation may continue to be appropriate."[44] The Seventh Circuit Court of Appeals has explained that point very aptly: "When we vacate a sentence and order a full remand, the defendant has a 'clean' slate—that is, there is *no sentence* until the district court *imposes a new one*."[45] We agree that a vacatur of a sentence and order of a full remand cancels the original sentence and renders the defendant unsentenced until the district court imposes a new sentence.

Here, we "vacate[d Mitchell's] judgment of sentence and remand[ed] to the District Court for resentencing."[46] Our

---

[42] *Id.*

[43] *Id.* (cleaned up) (quoting *United States v. White*, 406 F.3d 827, 832 (7th Cir. 2005), and *Greenlaw v. United States*, 554 U.S. 237, 253 (2008)).

[44] *United States v. Diaz*, 639 F.3d 616, 623 (3d Cir. 2011).

[45] *United States v. Mobley*, 833 F.3d 797, 802 (7th Cir. 2016) (emphasis added).

[46] *Mitchell*, 944 F.3d at 123.

vacatur of Mitchell's original sentence washed away that unconstitutional sentence, rendering it a nullity.[47]  We "wiped the slate" of Mitchell's sentencing record "clean."[48]  For that reason, Mitchell had no sentence as of the date of his resentencing.  Thus, § 403(b) does not prevent Mitchell from receiving the Act's benefits.

In conclusion, § 403(b) is ambiguous.  We will interpret it broadly to allow the Act's provisions to apply to a defendant whose pre-Act-unconstitutional sentence is vacated after the Act's enactment.  Mitchell is such a defendant.  Because Mitchell's sentence was fully vacated, he was an unsentenced defendant after the enactment of the Act and entitled to benefit from it.

## B.

Next, Mitchell contends that the District Court erred by applying to his Count One and Count Fifteen convictions the recidivist-drug-offender enhancement under 21 U.S.C. § 841(a).[49]  According to Mitchell, the sentences for those convictions should not have been enhanced because he is entitled to the ameliorative benefits of § 401 of the First Step Act.  Section 401 amended 21 U.S.C. § 841(b)(1)(B), which sets the penalties for convictions under § 841(a).  Specifically, § 401 limited the relevant prior drug convictions to those offenses for which the "offender served a term of

---

[47] *See Pepper*, 562 U.S. at 507.

[48] *See id.*

[49] We apply plenary review to questions of law, including applications for relief under the First Step Act. *See, e.g.*, *Andrews*, 12 F.4th at 259.

imprisonment of more than 12 months" and for which the "offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense."[50]

To begin, we note that the retroactivity-governing provision of § 401—§ 401(c)—tracks the language of § 403(b).[51] Thus, because we found that Mitchell's resentencing was eligible for the Act's benefits under § 403(b), his resentencing under § 401(c) is also covered by the Act. However, we must still decide whether Mitchell nevertheless should have received the recidivist-drug-offender enhancement under § 841(b)(1)(B) as amended by the Act.

Mitchell claims that the government did not prove beyond a reasonable doubt that he was released from any of his prior drug offenses within fifteen years of the commencement of his Count One and Count Fifteen offenses.[52] Count One charged him with conspiracy from January 2009 to March 2011 to distribute 500 grams or more of cocaine; Count Fifteen charged him with possession in October 2011 of at least 28 grams of crack and 506 grams of cocaine with intent to distribute. The parties agree that the government provided two prior drug convictions in its § 841 information: a 1985 conviction and a 1993 conviction. The parties also do not dispute that Mitchell's 1985 conviction would not satisfy §

---

[50] 21 U.S.C. § 802(57). Section 401 did this by amending § 841(b)(1)(B) to replace the words "felony drug offense" with "serious drug offense." "Serious drug offense" is defined by § 802(57) as described above.

[51] *Compare* § 401(c), 132 Stat. at 5220–21, *with* § 403(b), 132 Stat. at 5222.

[52] *See* 21 U.S.C. § 851(c).

841(b)(1)(B) as amended by the Act. As for the 1993 conviction, the question is whether Mitchell was confined during the period between 1995 and 2011.[53]

As for his Count One offense, it began less than fifteen years after Mitchell's initial 1995 release from prison for his 1993 conviction. Thus, even under the amended § 841(b)(1)(B), Mitchell should have received the recidivist-drug-offender enhancement for his Count One conviction. We will affirm the District Court's order applying the enhancement to that count.

However, as for his Count Fifteen conviction, the record is less clear about whether Mitchell was released from imprisonment for his 1993 conviction within fifteen years of the beginning of his Count Fifteen offense. Mitchell was initially released from prison for his 1993 conviction in 1995, but he was later sentenced to an additional six weeks of "custody" for violating the terms of his supervised release in 1998. Count Fifteen charged him with possession with intent to distribute on or about October 13, 2011. Mitchell's 1995 initial release for his 1993 conviction is not within fifteen years of the conduct charged in his Count Fifteen offense. Thus, for the Count Fifteen conduct to have begun within fifteen years of Mitchell's release from his 1993 conviction, Mitchell's 1998 time in "custody" for violating the terms of his supervised release would have to count as "imprisonment" for purposes of § 841(b)(1)(B).

---

[53] Mitchell does not dispute that his other two § 841(a) convictions—his Count Seven and Count Eleven convictions—occurred within fifteen years of his release from imprisonment for his 1993 conviction.

Confinement for violations of supervised release count when deciding whether to apply the recidivist-drug-offender enhancement under § 841(b)(1)(B) as amended by the Act. We have previously held that any term of imprisonment related to a violation of supervised release is "part of the initial sentence."[54] Even so, the government still had to prove beyond a reasonable doubt that Mitchell was released from imprisonment for the 1993 offense within fifteen years of the commencement of his Count Fifteen offense.

Here, the government does not seem to have met its burden. The best evidence that Mitchell served any "imprisonment" for his 1998 supervised-release violation is the presentence-investigation report, which explains that Mitchell was arrested in January 1998 and was sentenced to six weeks in custody in February 1998.[55] That is all. The record before us includes no prison records, court records, or any other documentary evidence to show what type of punishment Mitchell was actually subjected to in 1998 for the supervised-release violation.

---

[54] *United States v. Dees*, 467 F.3d 847, 853 (3d Cir. 2006); *see also Johnson v. United States*, 529 U.S. 694, 701 (2000) (holding that "post[-]revocation penalties relate to the original offense" and therefore "post[-]revocation penalties" must be "attribute[d] . . . to the original conviction"); 18 U.S.C. § 3583(a) (providing that supervised release is "a part of the sentence").

[55] The government also infers from his 1998 sentencing hearing that Mitchell served a term of imprisonment for his supervised-release violation.

At sentencing, the District Court appeared not to have reviewed the record to determine whether Mitchell served any confinement for his 1998 supervised-release violation because the court refused to apply the Act to Mitchell. For that reason, the record is incomplete. We will vacate the order enhancing Mitchell's Count Fifteen sentence and remand for the District Court to consider in the first instance whether the government demonstrated that Mitchell's 1998 supervised release violation involved a term of confinement.

## C.

Finally, Mitchell asserts three other arguments in his appeal. These arguments all lack merit.

First, Mitchell contends that the District Court plainly erred by incorrectly instructing the jury and providing it with an incorrect special interrogatory related to drug quantity relevant to his Count One conviction.[56] However, Mitchell cannot satisfy the plain-error standard. Even assuming that Mitchell is correct that the District Court erred and its error is plain,[57] any plain error concerning Mitchell's Count One

---

[56] To satisfy the rigorous plain-error standard, a defendant must show that (1) the district court erred, (2) the district court's error was plain—obvious under the law at the time of the error, and (3) the error affected his substantial rights—meaning, the proceeding's outcome. *Johnson v. United States*, 520 U.S. 461, 467 (1997). When all three elements are satisfied, we have discretion to remedy the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

[57] We express no opinion about whether the District Court's

17

conviction did not affect his substantial rights. That is so because the jury convicted Mitchell of two other offenses that carried the same sentencing range as his Count One conviction. We have previously held that, when a plain error at sentencing would not affect a defendant's ultimate sentence, that plain error does not affect the defendant's substantial rights.[58] Thus, Mitchell's argument fails because any plain error did not affect his substantial rights.

Second, Mitchell argues that, when the District Court sentenced him, it failed to adequately explain its sentence, in violation of 18 U.S.C. § 3553(c).[59] Section 3553(c) requires that a district court "state in open court the reasons for its imposition of the particular sentence, and[ ] . . . the reason for imposing a sentence at a particular point within the [sentencing] range . . . ." We have said that, to satisfy § 3553(c), a district court needs to provide only "concrete reasons" that justify a sentence.[60] Here, the District Court

---

special interrogatory and jury instruction amounted to error— let alone a plain error. Instead, we assume only for purposes of this appeal that the District Court erred and its error was plain.

[58] *See, e.g.*, *United States v. Vazquez*, 271 F.3d 93, 104 (3d Cir. 2001) (en banc).

[59] Mitchell and the government disagree about the applicable standard of review. Mitchell contends that we should apply plenary review, citing our decision in *United States v. Sevilla*, 541 F.3d 226 (3d Cir. 2008). Mitchell is wrong. We abrogated *Sevilla* in *United States v. Flores-Mejia*, 759 F.3d 253 (3d Cir. 2014) (en banc). As we recognized in *Flores-Mejia*, we will apply plain-error review. *Id.* at 255.

[60] *United States v. Gricco*, 277 F.3d 339, 362 (3d Cir. 2002),

18

justified the sentence it imposed by noting that Mitchell committed serious crimes, that he had a strong likelihood of recidivism, and that the sentence would deter future crimes. Thus, the District Court gave "concrete reasons" for imposing the sentence on Mitchell.[61]

Lastly, Mitchell challenges the substantive reasonableness of his sentence. However, because we are remanding this case for resentencing, this contention is moot.

## III.

The District Court erred by failing to afford Mitchell the benefits of the First Step Act. Thus, we will affirm in part, vacate in part, and remand this case to the District Court for resentencing in accord with this opinion.

---

*overruled on other grounds as stated in United States v. Cesare*, 581 F.3d 206, 208 n.3 (3d Cir.2009).

[61] *See, e.g.*, *Gricco*, 277 F.3d at 363 n.15; *see also United States v. Ward*, 732 F.3d 175, 186 (3d Cir. 2013) ("Before imposing the sentence, the District Court listed a variety of reasons why the sentence was necessary, including the seriousness of the crimes, [the defendant's] lack of respect for the law, his high risk of reoffending, and the need for general and specific deterrence. This was clearly a sufficiently detailed explanation of the reasons for [the defendant's] sentence.").

BIBAS, *Circuit Judge*, concurring in the judgment.

I agree with my colleagues that § 403(b) applies to Mitchell. But because I disagree about why, I concur only in the judgment.

My colleagues find the First Step Act's text ambiguous, so they lean on the Act's lenient purpose. These arguments do not persuade me. We are governed by laws, not Congress's intent. And Congress's concern for workability may favor leaving past sentences alone.

Then-Judge Barrett framed the issue correctly: had "a sentence … been imposed on [Mitchell] before the date of [the First Step Act's] enactment"? *United States v. Uriarte*, 975 F.3d 596, 610 (7th Cir. 2020) (en banc) (Barrett, J., dissenting). The hard issue here is whether a sentence has been "imposed" if that sentence was later vacated.

At first, I was going to dissent. Then-Judge Barrett's opinion had persuaded me that, as a *historical* matter, a sentence was imposed on Mitchell, even though it was later vacated. *Id.* at 606–08. It would seem odd to say otherwise. So the Act would not help Mitchell.

But a closer look at the nature of vacatur changed my mind. We should ask not whether a sentence was imposed as a historical fact, but whether the law treats it as imposed.

When a district court has made a reversible sentencing error, we vacate its judgment. That vacatur "void[s]" the sentence. *United States v. Jackson*, 995 F.3d 522, 525 (6th Cir. 2021) (quoting *Vacate*, *Black's Law Dictionary* (11th ed.

1

2019)). The key question is this: Does the vacatur void the sentence ab initio, as if it had never happened? *See Ab Initio*, *Black's Law Dictionary* (11th ed. 2019) ("From the beginning"). Or does it just erase the sentence's legal effect going forward? Our sister circuits have split on this question under the Act. *Compare Uriarte*, 975 F.3d at 602 (void from the beginning), *and United States v. Bethea*, 841 F. App'x 544, 550 (4th Cir. 2021) (same), *with Jackson*, 995 F.3d at 525 (void going forward).

Historical treatment, modern precedent, and a narrow immigration exception reveal that vacatur makes a sentence void from the start. And since we assume that Congress legislates against background legal principles, we cannot count Mitchell's vacated sentence as one imposed at the time Congress enacted the First Step Act. *See Bond v. United States*, 572 U.S. 844, 857 (2014).

*Historical practice*. Nineteenth- and early twentieth-century courts uniformly understood that, under the law, a vacated order never happened. In 1829, the Connecticut Supreme Court explained that vacatur "puts the parties in the state, in which they were, immediately before the [vacated] judgment was rendered." *Lockwood v. Jones*, 7 Conn. 431, 436 (1829). Likewise, the North Carolina Supreme Court explained that a court may no longer consider its prior "stricken" order because "it is the same as if the [order] had never been made." *Williams v. Floyd*, 27 N.C. (5 Ired.) 649, 656 (1845). And the Supreme Court of South Carolina held that when a judge "revoke[s] his order, the case [stands] just as if no order had been made." *Green v. McCarter*, 42 S.E. 157, 158 (S.C. 1902). So too, the

Second Circuit recognized "[t]he general rule" that when a court "stri[kes] out" its own order, "it is the same as if such order had never existed." *In re Rochester Sanitarium & Baths Co.*, 222 F. 22, 26 (2d Cir. 1915).

*Modern precedent*. More recent cases agree. As I have explained, "the general rule [is] that when a court vacates an order …, the legal status is the same as if the order never existed." *United States v. Jerry*, 487 F.2d 600, 607 (3d Cir. 1973), *abrogated on other grounds by Ohio v. Johnson*, 467 U.S. 493, 500 n.9 (1984); *accord, e.g.*, *Geiger v. Allen*, 850 F.2d 330, 332 (7th Cir. 1988).

*The immigration exception*. I have found only one line of cases that diverges from that rule. When deciding whether a criminal conviction makes an alien inadmissible, we sometimes consider vacated convictions. *See* 8 U.S.C. § 1182(a)(2). When a conviction has been vacated because the defendant had rehabilitated himself or suffered some hardship, it still disqualifies him for immigration purposes. *Khan v. Att'y Gen. of United States*, 979 F.3d 193, 202 (3d Cir. 2020). It retains some legal effect.

But this exception proves the rule. Even in immigration, if a conviction is legally defective, it is void from the start. When "a conviction is vacated *based on a defect in the underlying criminal proceeding*[ ]," it no longer counts "as a conviction for immigration purposes." *Id.* (emphasis added; internal quotation marks omitted). Vacaturs to cure legal errors still wipe convictions and sentences off the books. And that is what happened here.

Vacatur thus resolves this case. Section 403(b) of the Act applies to Mitchell if, before it became law, a §924(c) sentence had not been imposed. Because we had vacated his §924(c) sentences, none had been imposed. So he benefits from the Act.