**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-3329

_____

UNITED STATES OF AMERICA

v.

ALEX MELENDEZ, a/k/a King A.M.,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-05-cr-00044-007)
District Judge: Hon. Gene E.K. Pratter

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 14, 2022

Before: HARDIMAN, RESTREPO, and PORTER, *Circuit Judges*

(Filed: January 17, 2023)

_____

OPINION[*]

_____

RESTREPO, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Alex Melendez appeals his sentence of 342 months based on two alleged errors: (1) the District Court applied the wrong mandatory minimum to Count 7 of his sentence, and (2) erroneously denied his request for a downward adjustment for playing a minimal role in the crimes at issue.

First, the District Court's alleged sentencing error in applying the wrong mandatory minimum would constitute harmless error because Melendez's offenses were grouped pursuant to the Federal Sentencing Guidelines. The count at issue was not included in the group of offenses that formed the basis of his ultimate sentence, so the mandatory minimum for that count had no impact.

Second, the District Court did not abuse its discretion in denying Melendez's downward adjustment. The Court performed a thorough analysis of Melendez's relative culpability and the record supports a finding that Melendez played more than a minimal role in the criminal activity. Thus, we will affirm.

## I. BACKGROUND

### 1. Factual History

Appellant Alex Melendez was a "soldier" in the Philadelphia Lion Tribe chapter of the Almighty Latin King and Queen Nation ("Latin Kings")—an organization dedicated to committing drug trafficking offenses and violent crimes. Melendez's participation in this criminal enterprise included conspiracy to distribute heroin, kidnapping, conspiracy to commit kidnappings, beatings, displaying a firearm, conspiracy to commit murder, and attempted murder. Melendez contributed to the Latin Kings' drug enterprise by working as an "enforcer." In this role, Melendez forced customers to pay for their

drugs and beat those who did not.  He even suggested torturous methods of enforcement, such as feeding non-paying customers to a pit bull.

Melendez also took an active role in the punishment of rival Latin King members. In December 2003, Melendez and several co-defendants drove to New Jersey to kidnap and beat a Latin King member—Rafael "Billy" Guzman—for failure to report to the Philadelphia Lion Tribe.  Melendez, carrying a gun and wearing an armored vest, forced Guzman from his house and into a car at gunpoint.  During the drive to Philadelphia, Melendez threatened to "blow [Guzman's] head right off," splatter his brains all over the car, and dump his body in the dark wooded area along the highway.  Supp. App. 107.

Melendez and his co-defendants brought Guzman to the basement of a Philadelphia house where Melendez ordered him to remove his clothes.  There, Melendez and the others beat and severely injured Guzman until he was "virtually unrecognizable."  App. 124, 217.  While carrying out the beating, Melendez sought to escalate the violence by asking to shoot off Guzman's toes—a request that was fortunately denied.  When other members of the Latin Kings went to Home Depot to purchase a machete with the intention of using it to cut off Guzman's hands, Melendez and a co-defendant stood guard over him.  Melendez left and the other co-defendant fell asleep, allowing Guzman to escape and seek medical treatment.  Guzman then informed FBI agents about the kidnapping and beating, leading to the ultimate arrest of Melendez and his co-defendants.

### 2.  Procedural History

On January 26, 2005, a grand jury returned a 26-count indictment of Melendez and numerous other defendants.  The jury found Melendez guilty of five counts—Counts

3

One, Seven, Eleven, Thirteen, and Fourteen of the Indictment[1]—on March 15, 2006. On July 20, 2006, the District Court imposed an aggregate sentence of 444 months. On March 23, 2020, Melendez filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255.[2] On August 17, 2020, the Court granted his motion, vacated his judgment, and ordered the scheduling of a new sentencing hearing and the preparation of a new presentence investigation report.

On December 8, 2021, the District Court re-sentenced Melendez to an aggregate term of imprisonment of 342 months. His sentence was calculated pursuant to the Federal Sentencing Guidelines, which instructed that his various offenses be organized into two groups. U.S.S.G. § 3D1.2. The combined offense level for both groups was determined by taking the offense level of the group with the highest offense level. U.S.S.G. § 3D1.4.

At sentencing, Melendez argued that a lower mandatory minimum should apply for Count 7 because his sentence was vacated after the passage of the First Step Act, a

---

[1] The indictment charged him with the following offenses: Conspiracy to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d) (Count One); Conspiracy to distribute 1000 grams or more of heroin within 1000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and § 860 (Count Seven); Kidnapping in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) (Count Nine); Conspiracy to commit kidnapping in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) (Count Ten); Kidnapping in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) (Count Eleven); Conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) (Count Thirteen); and Using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count Fourteen).
[2] Melendez argued that his Section 924(c) conviction for Count Fourteen was unconstitutional, citing *Johnson v. United States*, 135 S. Ct. 2552 (2015) and *United States v. Davis*, 139 S. Ct. 2319 (2019).

comprehensive criminal justice law which reformed federal mandatory minimum laws as well as some aspects of the federal prison system. First Step Act of 2018, PL Pub. L. No. 115-391, 132 Stat. 5194. The Act reduced the mandatory minimum term of imprisonment from 20 years to 15 years for any defendant who, like Melendez, previously committed a serious drug felony after a prior conviction for a serious drug felony became final.

Nevertheless, the District Court, ruling before *United States v. Mitchell* was issued, held that the FSA did not apply retroactively here and applied the original 20-year minimum standard. *See* 38 F.4th 382 (3d Cir. 2022) (holding that § 401(c) applies to a defendant whose pre-FSA unconstitutional sentence was vacated after the FSA's enactment). Lastly, the District Court denied Melendez's request for a downward adjustment for minimal participation.

On December 17, 2021, Melendez filed a timely Notice of Appeal. He now argues that the District Court erred by (1) using the pre-First Step Act mandatory minimum term of imprisonment for Count 7, and (2) holding that Melendez was more than a minimal participant in the criminal activity and consequently withholding a downward adjustment.

## II. Discussion[3]

### 1. The District Court's Alleged Sentencing Error on the Mandatory Minimum Was Harmless

Melendez argues that the District Court procedurally erred by applying the wrong mandatory minimum for Count 7 and thus miscalculating the applicable sentencing range under the Federal Sentencing Guidelines. He specifically challenges the District Court's use of a 20-year mandatory minimum term of imprisonment for Count 7, even though his sentence was vacated, and he was resentenced after the enactment of the First Step Act, which applied a revised 15-year mandatory minimum to the same type of conviction. The Government submits that even if the District Court committed error, it was harmless.

Procedural errors at sentencing—including miscalculations of the Federal Sentencing Guidelines—are subject to harmless error review. *United States v. Raia*, 993 F.3d 185, 195 (3d Cir. 2021). "[T]he over-arching consideration . . . is whether an error 'affects substantial rights.'" *United States v. Adams,* 252 F.3d 276, 281 (3d Cir. 2001) (quoting Fed. R. Crim. P. 52). "[H]armless-error review for a sentencing error requires a determination of whether the error 'would have made no difference to the sentence.'" *United States v. Lewis*, 802 F.3d 449, 456 (3d Cir. 2015) (quoting *Parker v. Dugger*, 498 U.S. 308, 319 (1991)); *see also Williams v. United States*, 503 U.S. 193, 202–03 (1992)

---

[3] The District Court exercised jurisdiction over this case pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We exercise plenary review over legal questions involving the proper interpretation and application of the Federal Sentencing Guidelines. *United States v. Barbosa*, 271 F.3d 438, 461 (3d Cir. 2001). We review a District Court's factual determinations regarding role adjustment for clear error. *United States v. Richards*, 674 F.3d 215, 222 (3d Cir. 2012).

(holding that remand is required only if the sentence was "imposed *as a result of* an incorrect application" of the Federal Sentencing Guidelines) (emphasis in original) (quoting 18 U.S.C. § 3742(f)(1)).

A sentencing error in one offense may be rendered harmless when a defendant's offenses are grouped together pursuant to the Federal Sentencing Guidelines. *See e.g.*, *United States v. Gjeli*, 867 F.3d 418, 426 (3d Cir. 2017), *as amended* (Aug. 23, 2017) (finding harmless error where defendant's offenses were grouped and challenged count did not affect total offense level under the Federal Sentencing Guidelines). When a defendant has been convicted of more than one count, the Federal Sentencing Guidelines require the sentencing court to assemble closely related counts into groups. *United States v. Scarfo*, 41 F.4th 136, 211 (3d Cir. 2022); U.S.S.G. § 3D1.1(a). Once grouped, the court determines the offense level applicable to each group. *Scarfo*, 41 F.4th at 211; U.S.S.G. § 3D1.1(a). The combined offense level for all groups is then determined by taking the offense level of the group with the highest offense level. *Scarfo*, 41 F.4th at 211; U.S.S.G. § 3D1.4.

Here, the District Court grouped Melendez's offenses into Group 1 and Group 2. Group 1 consists of Counts 1 and 7, which concern Melendez's distribution of heroin. Group 2 includes Counts 1, 11, and 13, which focus on the victims of Melendez's crimes. Once grouped, Group 1 had an offense level of 32, while Group 2 had an offense level of 40. Pursuant to the Federal Sentencing Guidelines, the District Court determined that Group 2 had the highest offense level between the two groups and sentenced Melendez accordingly. Given that the offense level of Group 2 was used to determine the

sentencing range, we need not decide whether the District Court clearly erred by applying the 20-year mandatory minimum sentence instead of the 15-year mandatory minimum sentence to Count 7. Melendez's base offense level and sentence would have remained the same regardless of the mandatory minimum sentence assigned to Count 7 as it was in Group 1. Thus, even if the District Court erred it would constitute harmless error.

## 2. The District Court Did Not Abuse Its Discretion in Denying the Downward Adjustment

Melendez contends that the District Court erred in refusing to recognize him as a minimal participant in the criminal activity and consequently withholding a downward adjustment. In doing so, Melendez challenges both the District Court's factual determinations and legal analysis.[4] With regard to the factual challenge, Melendez argues that the downward-role adjustment was warranted because he was only a "soldier" in the Latin Kings who was merely following orders and not a leader in the organization. Regarding the legal challenge, Melendez argues that the District Court failed to perform a comparative analysis of his culpability in relation to the culpability of his co-defendants.

---

[4] The Government argues that Melendez's request for a role reduction is procedurally barred under the "law of the case" doctrine. This doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern *the same* issues in subsequent stages *in the same case*." *Arizona v. California*, 460 U.S. 605, 618 (1983) (emphasis added). The Government's argument fails because this is plainly not *the same* case. Melendez's original sentence, where he first sought a role reduction, was vacated. The vacatur "effectively wiped the slate clean." *Pepper v. United States*, 562 U.S. 476, 507 (2011) (holding that the law of the case doctrine did not apply after a defendant's entire sentence was set aside and remanded for *de novo* resentencing); *see also Mitchell*, 38 F.4th at 389. Consequently, this Court is not bound by the law of the case doctrine.

The Federal Sentencing Guidelines "provide[] a range of [downward] adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, cmt. n.3(A). A minimal participant is "plainly among the least culpable of those involved in the conduct of a group," whereas a minor participant is one who is perhaps "less culpable than most other participants," but "whose role could not be described as minimal." *Id.* at cmt. n.4–5.

Whether a defendant's conduct merits a minor or minimal role adjustment is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." *Id.* at cmt. n.3(C). This Court has identified several factors to aid in this determination: "(1) the defendant's awareness of the nature and scope of the criminal enterprise; (2) the nature of the defendant's relationship to the other participants; and (3) the importance of the defendant's actions to the success of the venture." *United States v. Brown*, 250 F.3d 811, 819 (3d Cir. 2001). Given that "§ 3B1.2 is ultimately concerned with the defendant's relative culpability," these factors should be considered "in relation to the other participants." *United States v. Isaza-Zapata*, 148 F.3d 236, 239 (3d Cir. 1998).

### a. The record supports the District Court's finding that Melendez did not have a minimal role in the criminal activity

Melendez's first challenge is to the District Court's factual determinations regarding his role adjustment, which we review for clear error. *See United States v. Richards*, 674 F.3d 215, 222 (3d Cir. 2012). Here, the record supports the District Court's denial of a downward-role adjustment as the Court found ample evidence to suggest that Melendez

was not substantially less culpable than the average participant in the offenses. One is not entitled to a reduction based on one's role in the offense even if one's involvement was limited to drug courier, and here, Melendez was far more involved than that. *See, e.g.*, *Isaza-Zapata*, 148 F.3d at 242 (stating even limited roles such as drug courier are "not automatically entitled to a minor role adjustment"); *see also United States v. Headley*, 923 F.2d 1079, 1084 (3d Cir. 1991) ("The fact that a defendant's participation in a drug operation was limited to that of courier is not alone indicative of a minor or minimal role.").

As evidenced by the record, Melendez understood the violent nature of the Latin Kings and went above and beyond to carry out its goals. For example, he beat up non-paying drug customers and participated in the kidnapping and torture of a Latin King member. In light of the *Brown* factors, Melendez's role cannot be described as "minimal." 250 F.3d at 819. Accordingly, the District Court did not clearly err in denying Melendez's request to reduce his offense level as a minimal participant.

**b. The District Court conducted a comparative analysis of Melendez's culpability in relation to his co-defendants**

Melendez's second challenge is to the District Court's legal analysis regarding his role adjustment, over which we exercise plenary review. *Isaza-Zapata*, 148 F.3d at 237. To determine whether a defendant qualifies for a mitigating role adjustment, the sentencing court must perform a comparative analysis to assess the relative culpability of the defendant compared to participants in the criminal activity. *See United States v. Bierley*, 922 F.2d 1061, 1065–66 (3d Cir. 1990) ("[M]itigating role adjustments apply only where

there has been group conduct and a particular defendant is less culpable than other members of the group to such a degree that a distinction should be made at sentencing between him and the other participants.").

Here, the District Court employed a comparative analysis to assess Melendez's relative culpability. At the sentencing hearing, the District Court asked the Government to recount the background of the case resulting in discussion of Melendez's conduct in comparison to his co-defendants. App. 233. The Government noted that "Melendez *and* others" kidnapped Guzman and that "Mr. Melendez *and* Mr. Ortiz" guarded the basement. App. 217–18 (emphasis added). While participating in a group beating, Melendez pleaded with the leader to allow him to shoot Guzman's toes off and when the "rest of the Latin Kings" decided to cut off Guzman's hands, Melendez stood guard while they went to Home Depot to buy a machete. *Id.* The Government also highlighted how Melendez was different from other drug enforcers since he not only beat up non-paying drug customers but also sought permission to feed one of the drug customers to a pit bull. When denying the downward adjustment later in the sentencing, the District Court expressly cited this "memorable litany of activity." App. 233. Thus, the Court employed a comparative analysis of Melendez's relative culpability.

### III. CONCLUSION

For the foregoing reasons, we will affirm the District Court.